Good morning, Your Honors. Mike Bresnahan representing the appellant, David Ruderman. As sort of an overview, I'd just like to point out our position that Mr. Ruderman had a Sixth and Fourteenth Amendment right to be tried by an impartial jury and to be represented by competent counsel. Arguably, in this case, he was afforded neither. He is now serving a life sentence for sexual conduct with a minor. In that case, there were 12 jurors who voted to convict, two were arguably biased. Four were child molest victims. One was a multiple rape victim. A sixth was so troubled by the case she couldn't sleep the night before. She was selected to be a juror in the case and expressed this to the judge in open court. In this particular case, Ruderman's attorney never even questioned two of the jurors who claimed to be child molest victims. He used all six of his promptery challenges in this case to strike other potential jurors. So I was looking for the Supreme Court case that said that the trial court could violate the defendant's right to trial by an impartial jury by failing to act sua sponte, because that's the issue here, right, that the attorneys, the counsel, didn't challenge those particular jurors. That's one of the two issues, yes. Is there a case, is there a Supreme Court case? What's the Supreme Court case that's closest on point that's relevant here? Well, I didn't cite a specific Supreme Court case. I did cite a Ninth Circuit case that speaks to this question of whether the judge has a sua sponte obligation to do that and Is that our dire opinion? Let's see. U.S. v. Mitchell, I think I cited. Mitchell. Yeah. And I was looking for a specific Supreme Court authority. I didn't find any directly on point. There may be, but I didn't find it. My argument there is that it's implicit in the any Supreme Court decision that has come down and acknowledged that under the Constitution, the defendant has a right to an impartial jury. It must be implicit in those kinds of decisions because it suggests that the trial court is obligated to do whatever is reasonably necessary to ensure that that happens. And if the defense attorney doesn't do his job, who else is there to do it? Obviously, the government isn't motivated necessarily to strike jurors that would appear to be damaging to the defense. And so I would say the best I can do today is to say that it must be logically implicit in any decision by the Supreme Court. And there are a string of decisions, many decisions. Let's take that concept and apply it to the posture of such a case as was evident here. The trial judge did, in fact, as I recall, talk to the jurors or talk to the counsel about it. I think, and I hope I'm not mixing it up with another case, but I think the judge, did he not offer the counsel an opportunity to do further questioning or was that in a different case? Well, in this particular case, the judge did allow follow-up FOIA dire. And in the case of two of the child molest victims, the, well, the way it unfolded here is the judge went through the normal FOIA dire that the court does in these kinds of cases, that particular court, and asked a number of questions to the panel generally. And they were the fair and impartial kind of questions that are asked to the group as a whole. And whether any had been victims of crimes and so forth. And to the victim of crimes questioned, there were some responses. And there was some follow-up, individual follow-up after the panel had been questioned. And the defense attorney here had an opportunity to call in all of the individuals who had revealed that they were child molest victims and ask them whatever questions might be appropriate under the circumstances. And some questions were asked of some of them. Two of them were not called in and questioned at all by the defense attorney, which, I guess, strikes me as a trial lawyer as being extraordinary in a case like this. Okay. And that's what is bothersome about the general principle that you're invoking. I take your point. I think it's true that trial judges have their own constitutional obligation to make sure that the trial is fair. But we're also told under many Strickland cases, particularly in the EBPA context, that there is a high degree of deference to the strategic decisions of counsel. And under those circumstances where counsel, you know, primary duty at voir dire is to make judgments about the prospective panel for a trial judge to interpose his, in this case it was a male judge, so I'll say his, own assessment on top of trial counsel. And the ineffective assistance claim then depends on second-guessing the trial counsel's judgment not to question the two you mentioned or exercise peremptories against either the two of them or the four others. We are sitting in a position now of saying that the trial judge made an error of constitutional dimension by not overriding a strategic decision of the lawyer who is representing the defendant. And I have no idea about this lawyer, I mean, what the trial judge saw in this lawyer, what he knew about this lawyer, where he would say, look, it's his call, he's not an incompetent lawyer, he's been in front of me many times, I just don't know. And so for us to say on this record that the strategic decision made by the trial counsel not only was ineffective assistance, but in fact the trial judge was wrong in the first instance by even letting the lawyer get away without making the challenge. And that's the difficulty I have in this case. And I understand your problem with that. To that I would say that the judge has a responsibility to ensure that a fair and impartial jury is empaneled, regardless of whether the defense attorney speaks up. That's a fundamental right that the defendant has. And the attorney can't waive that right for the defendant, at least not without a proper waiver. I think in a situation like this, and now I'm talking about extreme situations where you have a child molest case being empaneled by a number of child molest victims who haven't been thoroughly vetted by either the court or the defense attorney. So there hasn't even been a vetting process. I would imagine that the trial judge did ascertain from each of the jurors that they could set aside the prejudice. I mean, at least the trial judge went that far and got the answer to the question. So the question for me on your first argument, the sui sponte duty, is then once the jurors say, well, they can be impartial, they can set aside this, what triggers the sui sponte duty to exclude them at that point? I think the answer, and there is some case law that was cited to this point, I think the answer is it's circumstantial. If you have, again, an extreme situation, a child molest case where there are a number of panelists who are claiming that they are child molest victims, and also who have said things like I've been to counseling over it or it's still fresh in my mind after 20 years, those kind of comments that were present in this case, I think it's incumbent upon the judge at that point to make sure that more than a group question is asked to these people. The courts have recognized that, first of all, jurors in many cases are not comfortable revealing biases. They're not sometimes not comfortable revealing their real thoughts and feelings in front of the larger panel. I mean, this is human nature. So in this instance, I think this is one of those extreme circumstances where one would have expected that if the attorney wasn't being aggressive in this area, which is inexplicable in my mind, then the judge should have stepped in and become aggressive. And then to the point, well, should the judge be overruling strategic decisions on the part of, or meddling with strategic decisions on the part of the attorney, there's a way to address that as well. They can have a sidebar. They can talk about it, make a record of it. The judge can say, you know what, I'm not comfortable with these jurors being on the panel, at least not without some more vetting here. How they would do it, I'm not sure. But, again, without some assurances that the client had waived his right to an impartial jury by allowing these kinds of jurors to remain on the stand. You seem to be addressing a best practices type of proposal. But aren't we, under an AEDPA framework, aren't we looking to see whether the State court's rejection of that theory was contrary to Supreme Court precedent? So don't we need to figure out why it would be, what precedent it would be contrary to? Well, yes. And, again, I didn't cite a Supreme Court case that had a similar factual pattern to this. But, again, I'm arguing from the standpoint that it's implicit in any and all of those decisions, acknowledging the right to a fair and impartial jury, that the court is obligated to do whatever is reasonable and necessary. And I can't imagine what strategic purpose would be behind an attorney not even questioning jurors who claim to be child molest victims and who would rather rely on a group question, a response to a couple of group questions, knowing human nature, knowing how fallible that process is. And as a trial attorney, it's very frustrating trying to pick a jury using that process. And how easy it is for the court to simply rehabilitate these jurors by simply asking them, well, despite all of these traumatic experiences you've had, can you be fair and impartial? And usually the question is asked in the presence of the larger panel. And a lot of pressure to say, yeah, I guess I can be fair and impartial. So this is sort of the backdrop against which we are constantly working and trying to preserve a fair and impartial jury for our clients. And it's not a perfect system. So when you run into extreme situations like this where the attorney should have been doing much more for his client and the judge, the attorney having failed it, the judge should have stepped in and done something here. I mean, this man is facing a life sentence. I think that this does merit relief, even under, you know, the AEDPA standards. You've got about a minute left. Do you want to reserve? I'd like to. Yeah, thank you. Thank you. Oh, yeah. Good morning. My name is Scott Simon. I work for the Arizona Attorney General's Office, and I represent the State of Arizona in this matter. Your Honors, Petitioner has failed to present any facts or argument sufficient to rebut the presumption of correctness afforded to the State court's determination that a fair and impartial jury was enpaneled in this case. Could I just stop you there for a moment? Of course. The court didn't make any express findings, right? So how does the presumption attach to the implicit finding? Do we have any cases that support that? I don't know if I have a case necessarily right now to say, essentially, that the trial court's enpaneling of the jury was implicitly found, but that's the sort of deference in the cases such as, I believe, Mitchell and Miguel, where the trial court is afforded certain deference that they know and presume to know the law, and thus, by the very nature of ceding the jury, this court can infer that the trial court found that those jurors were fair and impartial. So I guess you're conceding that the trial court has a duty. I do concede. I do concede that the trial court absolutely has a duty to ensure that the jury is fair and impartial. Yes. Yes. To sui sponte, a strike, a bias juror, it's clear in this case, however, that there were no biased jurors sat on the jury, and necessarily that forecloses any relief on Petitioner's ineffective assistance of counsel claim. Well, there were some who were questioned and some who were not. Three and six were never questioned, but they responded to the Court's general question of whether or not they had ever been a victim of a crime, and they did indicate some experience as children being molested. But they never actually made any affirmative statements that they could not be fair and impartial. And, in fact, in a follow-up question that the Court posed to the general panel on whether or not these jurors' experiences could prevent them from being fair and impartial, these two jurors, three and six, remained silent, which is at least some indication of their ability to render a fair and impartial verdict. And, in fact, in response to that question, I believe it was Juror 11 actually responded that, at least initially, he had some reservations, but then was sufficiently rehabilitated and stated that he could, in his words, absolutely. I think it was a she, wasn't it? A she. I apologize. It was a she. She could absolutely make a decision based on the evidence. And during questioning, actually, by defense counsel, stated that she could do the trial justly, and if she were the defendant, she would want herself on the jury. And, in fact, Juror 1, Juror 4, 10, and 11 all were questioned and at least made affirmative statements that they could render a fair and impartial verdict. And I think that's sufficient, particularly under United States v. Miguel, in which two jurors indicated that they had been molested as children and two jurors indicated that they had family members that had been molested, and the fact that they were questioned by the court and indicated they could render a fair and impartial verdict was sufficient to satisfy this court that a fair and impartial jury was in panel. Well, turning to the Strickland issue, then, I don't understand what would be a reasonable strategy in not questioning the jurors. And on that point, I'd just like to make a quick point, and with all due respect to opposing counsel and to this court, the COA was granted in regards specifically to the trial counsel's failure to challenge the jurors for cause, not necessarily to whether or not the questioning was sufficient. So it would be my argument that any such claim would be waived under ADEPA. Well, fair enough. But to answer your question, I think that there's a certain amount of deference that's given both to the trial judge and under Strickland to trial defense counsel. No doubt about that. My question is, what strategy do you see that would be reasonable when you've got a – this guy is facing life imprisonment for molestation. You have jurors who have been molested. Why wouldn't you question them or take some other action, or then, to the ultimate question, challenge them for cause? That's what I'm – Well, to address Your Honor's first question, I would just have to defer to trial – under Strickland, defer and presume that there is some sort of trial strategy, some sort of presumption that there was something that that trial defense counsel saw in those particular jurors that gave him an indication that they could render a fair and impartial verdict. And there's nothing in the record. We don't know why. And I agree with that. So I would have to rest essentially on the Strickland presumption. Right. But you don't see anything here that would indicate that – why he would say let's question this juror or not. I don't – nothing in the record to me suggests that there was no reason to follow up with those particular jurors. And by those jurors, I refer to three and six, because those are the only two jurors that weren't followed up on. To address your second question in regards to challenging them for cause, it's well established that the failure to make a feudal motion does not constitute an effective assistance. And here you have four jurors that were individually questioned and indicated that they could render a fair and impartial verdict. The two jurors that weren't questioned, at least implicitly, gave an indication that they could render a fair and impartial verdict. So any subsequent motion to remove them, based on this record, to remove them from cause would have been denied and then thus would have been feudal. So to find that rendered ineffective assistance, I think Strickland controls under that – for that particular proposition. It's still hard to divine. I understand your point, but you still haven't quite answered my question. I think maybe it's unanswerable why in the world defense counsel wouldn't challenge for cause jurors who have been molested, and especially the jurors here who are obviously struggling with it. I mean, that's a – and the trial court coaxes the answer out of them. Do you think you could be impartial in there? Yeah, I think so. I can set it aside. And I would argue, even presuming, even assuming arguendo, that there really was no reasonable trial strategy reason not to question these jurors, I think that any – it doesn't answer the second portion of Strickland, which is the prejudice prong. Wait a minute. That I don't understand. If a biased juror gets on the jury, you don't think that's prejudicial per se? No, I'm not – I'm sorry, Your Honor. I didn't mean to make that impression that a biased jury was impampled. My point was is that if for some reason it was in effect of the failure to question these jurors, my position is is that the jurors were all indicated that they were able to render a fair and impartial verdict. So the mere fact of not eliciting additional questioning of those jurors was unreasonable as far as trial strategy. Petitioner can't satisfy the second prong of Strickland, which is to establish prejudice because it essentially is – it comes full circle. In order to establish prejudice under Strickland, you would have to first establish that a biased juror was impaneled. And under these particular – on this record, I think it's pretty clear that the jurors were able to render and made that clear that they were able to render a fair and impartial verdict despite their past experiences. But that comes back to the original question I think Judge Thomas posed, which is why didn't he question them to establish the grounds for bias such that you couldn't then say, well, it's harmless because it would have failed. It's circular both ways. And I think on that point as well, you know, regardless of whether or not defense counsel went further and questioned them further, any – essentially any answers they would have given or postulate what kind of answers they would have given would have been at this point speculation. There's no indication that had they been questioned further, particularly Jurors 3 and 6, they could have said essentially, yes, despite my experiences, I can render a fair and impartial verdict. Or they could have said, based on my experiences, I can't. I think that that comes back to the trial court's question, to the general question of the jury of whether or not they could render a fair and impartial verdict despite their experiences. And those two jurors remained silent. Right. I mean, you've got Juror Number 3. Or trial – yeah. Trial Juror Number 3 who says she was molested, and then the same person molested her cousin, and she got a detective or hired somebody to – got a detective and – I'm sorry, she didn't hire a detective. She talked to a detective and turned him in. I mean, boy, it's hard to see why you don't make a motion either or exercise a peremptory on any of these, really. Yeah. And I would fall back on the argument that although it's hard to imagine, we really don't know because of that factor. And essentially that would be speculation, and I think it's well settled, but I don't think it is well settled, that speculation under Strickland is insufficient to meet that standard. It is, but the strategy has to be a reasonable strategy. Right. And that's why I'm asking the question. I mean, a lot of trial attorneys are pretty bad at voir dire, and they get – they don't ask questions. And you accept that, I guess. I mean, there's no strategic reason. They just sort of freeze up because it's a different process than the trial. But then there's nothing preventing somebody challenging for cause or exercising a peremptory, and I just look at this record. It's kind of inexplicable to me. And it is, as Judge Snow said in his order in the court below, it is somewhat troubling. But the fact is is that the fact that there was no follow-up or there was no challenge for cause on this record, on these facts, is insufficient to satisfy the Strickland prejudice standard because it's merely – it's speculation, particularly with the four jurors that indicated that they could render a fair and impartial verdict. And again, with three and six, that at least – and I would cite the – I believe I cited in my brief the Matthews v. Simpson case, which was out of the Western District of Kentucky, in which the court held there that that silence was sufficient at least to give an indication that they could render a fair and impartial verdict. And the mere fact that these jurors, three and six, stated that they had this prior experience doesn't necessarily, as a matter of law, render them unable to be – render a fair and impartial verdict. And I think unless there's any further questions. Just one. And I don't know this point, and you can probably clarify it. I know there was no evidentiary hearing on this. Was one requested in state court? I believe he did. He – it was a pro per. He represented himself, and he did request an evidentiary hearing. But I don't believe – there was not one granted. And that was on the Strickland question? That was on his entire Rule 32 petition. Yes. Any further questions? No.  Thank you very much. Thank you, Your Honors. Your Honors, to argue that it would be speculative to wonder why an attorney in a child molest case wouldn't first of all examine the child molest victims on the panel and then to move to strike – and or to move to strike them, to suggest that because it's speculation to wonder about these things that this Court, any reviewing court, doesn't have the authority, if not the duty, to determine whether reason and logic compels the conclusion that there couldn't have been a reasonable strategy, I think is wrong. No reasonable defense attorney under these circumstances would have behaved this way. It is inconceivable. I suppose it's conceivable that after completely vetting and fully vetting a juror, that a defense attorney might want to keep him or her on the panel. But there was no vetting, again, other than the general vetting that the Court pointed out. So how do you respond to the COA argument that we don't have jurisdiction to get into the idea or the counsel's performance on questioning as opposed to making the challenge? I'm sorry. Because the government argues – and didn't push the point, but it's a jurisdictional question – the COA doesn't encompass the issue you're talking about necessarily. It says the COA talks about the failure to challenge, to make the challenge to the jurors. Right. Well – I guess your argument would be it's subsumed? Yes. It's subsumed. And the argument at the district court level was couched in terms of challenging the jurors for cause. And that can mean more than just striking. It can mean vetting as well. And I discuss that in my brief as well. I discuss the deficiency surrounding not just the failure to move to strike, but also the failure to vet. It is in the brief. Although I couch the overarching issue as one of the – I'm not saying you didn't raise it, but arguably the government's contention is it's not in the COA and therefore beyond the jurisdiction. So I guess we'll just have to look at that. Okay. We've taken you over your time. Do you want to make one last point? Yes, Your Honor. To the extent that the Court is considering the Rubio decision that came in by letter late, I would urge the Court either to do one of two things. Either not consider it – consider it a waived issue or allow me to brief it, because it raises a number of complex issues about duty of counsel to strike jurors in order to preserve – with appropriate – in order to preserve the claim. It's not applicable. I don't think in this setting, but, again, I haven't had a chance to brief it. Okay. And then finally, three of the six jurors, to counsel's point, three of the six jurors voiced actual bias in this case and were at least somewhat ambiguous regarding whether they could be fair and impartial. The other three were child molest victims who were obviously affected by their experiences. Gonzales v. Thomas, which I cite, 10th Circuit case, says in so many words, the similarity of the jurors' experiences to the subject matter of the trial, coupled with impact, if the jurors were truly impacted by that, can amount to implied bias as a matter of law. None of the six jurors unequivocally and expressly stated that they could be fair and impartial. They said things here and there, kind of on the edges, but none of them expressly said that. I noted that argument. What's the authority that says they have to affirmatively state that they won't be biased? Well, there's no per se rule, and I'm not trying to sell that idea here. I'm just saying that's more evidence that they equivocated. And it's simply more evidence that they were concerned about their own ability. Thank you. Thank you, counsel. Thank you both for your arguments this morning. Well presented.
judges: Thomas, Fisher, Ikuta